## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STEPHEN DANTE ELDRIDGE, JR.** | |
| **Plaintiff,** | |
| **v.** | **Civil Action: MJM-21-3200** |
| **JOSHUA STACKHOUSE, et al.,** | |
| **Defendants.** | |

### MEMORANDUM

Plaintiff Steven Dante Eldridge, Jr. filed a civil rights complaint pursuant to 42 U.S.C. § 1983, which he subsequently supplemented as directed by the Court.  ECF Nos. 1, 3, 4.  Defendant Officers Joshua Stackhouse and Brian Costanzo (collectively, "Defendants") moved to dismiss the Complaint and the Supplement to the Complaint.  ECF Nos. 17, 22.  Eldridge was advised of his opportunity to respond to the dispositive motions, and he filed a single response.  ECF Nos. 18, 23, 26.  Also pending is a motion filed by Eldridge under "Rule 12" to which the Defendants have responded.  ECF Nos.  27, 28.   Finally, Eldridge filed a motion to appoint counsel.  ECF No. 31. No hearing is necessary to determine the matters pending.  *See* Loc. R. 105.6 (D. Md. 2023).  For the reasons stated below, Defendants' motions to dismiss will be granted.

### I.     BACKGROUND

#### A. Eldridge's Allegations

Eldridge brought this case based on events that took place during a traffic stop on April 30, 2019.  ECF No. 1 (Compl.) at 2.  On that date, Eldridge was driving a "tinted" 2002 red Honda Accord on South Smallwood Street in Baltimore City.  *Id.*  He states that Officer Stackhouse told him that "he had information pertaining to a warrant" and claims that Stackhouse then searched

his car without probable cause. *Id.* As a result of the search, he was charged with firearm possession. ECF No. 4 at 2. Eldridge believes he was targeted by the Baltimore City Police Department because he is a rap artist. ECF No. 1 at 2.

With his Complaint, Eldridge submits a document that purports to include part of an affidavit by Officer Stackhouse ("the Stackhouse affidavit") that was written in support of a request for a warrant to obtain a DNA sample from Eldridge to compare to DNA found on a gun that was seized during the traffic stop. ECF No. 1-1 at 1-2. The Stackhouse affidavit states that he and Officer Costanzo were on routine patrol when they observed a 2002 red Honda Accord with tinted windows and began following the vehicle. *Id.* at 1. Officer Stackhouse noticed the vehicle "picking up speed" and traveling faster than the posted speed limit of 25 miles per hour. *Id.* Officer Stackhouse attempted to catch up to the vehicle, but the vehicle continued to "pull away." *Id.* Officer Stackhouse was traveling at 55 miles per hour, still attempting to catch up to the vehicle. *Id.* at 1-2. He observed a parked school bus with its lights flashing. *Id.* at 2. He states that he has seen children waiting on the bus and playing in this residential area on any given day. *Id.* Officer Stackhouse saw the vehicle "swerve out and around the bus" and continue. *Id.* Officer Stackhouse initiated a traffic stop by activating his emergency equipment in the 500 block of South Monroe Street. *Id.* The driver, later identified as Eldridge, was "making furtive movements leaning over and reaching out toward the passenger and the passenger's side glove box." *Id.* Officer Stackhouse also observed a passenger making furtive movements and reaching around inside the front and back seats of the vehicle. *Id.*

Officer Stackhouse advised Officer Costanzo of his observations, and both officers approached the vehicle. *Id.* Officer Stackhouse made contact with Eldridge, who provided him with his Maryland identification card. *Id.* Officer Stackhouse noticed that Eldridge's hand was

"shaking." *Id.* Officer Stackhouse detected a "strong and overwhelming" odor of marijuana coming from inside the vehicle, and Eldridge admitted smoking marijuana the previous night. *Id*. Eldridge was handcuffed, and Officer Stackhouse felt his "heart beating heavily." *Id.*

Officer Stackhouse requested additional units to respond and continued his investigation. *Id.* He found several bags of CDS (controlled dangerous substance) packing materials inside a pink backpack on the front passenger's side floor. *Id.* Officer Stackhouse also opened the locked passenger side glove box with the key that was in the ignition. *Id.* In the glove box, he found a 9mm Sig Sauer with one magazine containing 17 live 9mm cartridges. *Id.* Officer Stackhouse also found a loose piece of marijuana in front of the center console and another small piece of marijuana under the passenger's side seat. *Id.* Eldridge and the passenger were then arrested without further incident, and the car was towed to the City Yard. *Id.*

Eldridge also submits as exhibits copies of the citations he received on April 30, 2019, for driving without a license, speed greater than reasonable, and failure to submit registration card on demand. *Id.* at 5-7.

In his Supplement to the Complaint, Eldridge states that due to the illegal search, he was charged with firearm possession and sentenced to five years without parole and an additional seven years for violation of probation. ECF No. 4 at 2-3. He seeks damages against Defendants for false arrest and false imprisonment. ECF Nos. 1 at 3; 4 at 5.

### B. Defendants' Motions to Dismiss and Eldridge's Opposition

Defendants assert in their respective Motions to Dismiss that the Complaint and Supplement to the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 17-1 at 1; ECF No. 22-1 at 1. Defendants assert that based on the uncontroverted statements contained in Officer Stackhouse's affidavit, they had probable cause

for their warrantless search and, therefore, Eldridge has failed to state a claim for false arrest and false imprisonment.  ECF Nos. 17-1 at 3-5; 22-1 at 3-5.

Eldridge argues that Defendants' motions should be denied because, contrary to Officer Stackhouse's affidavit, he had dark tint on his car, and it is not plausible that Officer Stackhouse saw movement inside the car.  ECF No. 26 at 1.  Eldridge further asserts that Officer Stackhouse's use of the car key to unlock the glove box violated his constitutional rights.  *Id.*

### C.  Eldridge's Rule 12 Motion and Defendants' Opposition

Eldridge also filed a document entitled "Motion" stating it is filed under Rule 12.  ECF No. 27.  In this document Eldridge again states that Officer Stackhouse used the car key to unlock the glove compartment where the weapon was found.  *Id.* at 1.  He then "had to" plead guilty to a violation of probation on July 15, 2020.  *Id.* at 2.  Eldridge also references another individual and states that Officer Stackhouse similarly violated that individual's rights in an unrelated incident with facts similar to those in his case.  *Id.*

Defendants filed a response in opposition to Eldridge's motion.  ECF No. 28.  In their opposition, Defendants state that if the Court construes Eldridge's motion as a response in opposition to Defendants' Motions to Dismiss, the Court should consider Defendants' filing to be a reply.  *Id.* at 2.

The Court construes Eldridge's Rule 12 "Motion" as a supplement to his opposition to the Defendants' Motions to Dismiss, and not as an independent motion.  As such, the Court will also consider Defendants' opposition to Eldridge's "Motion" as a supplemental reply in support of the Motions to Dismiss.

In Defendants' filing, construed as a reply, they reaffirm that Officer Stackhouse's use of the car key to open the glove compartment where a weapon was recovered does not constitute a

violation of the Fourth Amendment.  ECF No. 28 at 2.  They also note that Eldridge does not claim

Officer Stackhouse's affidavit to be false wherein he states that he detected a strong and

overwhelming odor of marijuana coming from the vehicle.  *Id.* at 3.  Finally, Defendants argue

that statements made by Eldridge pertaining to another individual's interactions with Officer

Stackhouse are unrelated to this matter and not `relevant to the merits of the Complaint.  *Id.*

## II.     STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a defendant may file a motion to dismiss a complaint for failure

to state a claim upon which relief may be granted.  Fed. R. Civ. P. 26(b)(6).  To survive a Rule

12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  A complaint need not include "detailed factual allegations," but it must

set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even

if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).  Furthermore, federal pleading

rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory

supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action's

elements will not do."  *Twombly*, 550 U.S. at 555 (cleaned up).  And though district courts have a

duty to construe self-represented pleadings liberally, a plaintiff must nevertheless allege facts that

state a cause of action. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985) (duty to construe liberally does not require courts to conjure up questions never squarely presented).

## III.    DISCUSSION

Title 42, United States Code, Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. This statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009). Here, Eldridge asserts that Defendants violated his rights under the Fourth Amendment to the U.S. Constitution by conducting a search of the vehicle he was driving and arresting him, both without a warrant and without probable cause.

Officers Stackhouse and Costanzo assert that Eldridge's Complaint and Supplement to the Complaint should be dismissed because he fails to state a Fourth Amendment claim for unlawful seizure, arrest, and imprisonment. ECF Nos. 17-1 at 3-6; 22-1 at 3-6.

> A traffic stop "constitutes a 'seizure' under the Fourth Amendment and is thus subject to a reasonableness requirement." *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). A traffic stop is reasonable under the Fourth Amendment if (1) it was "legitimate at its inception" and (2) "the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop." *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018) (quoting first *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017), then quoting *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015)).

*Carey v. Wolford*, Civ. No. BAH-22-0782, 2024 WL 3568960, at *5 (D. Md. July 29, 2024).

Officer Stackhouse's affidavit states that the traffic stop took place after Eldridge was observed traveling at a high rate of speed and swerving out and around a stopped school bus with its lights flashing. ECF No. 1-1 at 1-2. Eldridge does not dispute these allegations, nor does he contest the lawfulness of the traffic stop.

What Eldridge does contest is the car search that took place. To state a claim for relief, Eldridge must allege that Defendants' actions were not "reasonably related in scope to the basis for the traffic stop." *Bowman*, 884 F.3d at 209. On this point, Eldridge asserts that due to the tint on the car windows, Defendants could not have seen Eldridge "making furtive [movements] leaning over and reaching out toward the passenger and the passenger's side glove box" or the passenger making "furtive movements" by "reaching around inside the vehicle front and back seats." ECF Nos. 1-1 at 2; 26 at 1. On these grounds, Eldridge concludes there was no basis for Defendants to search the car or, in particular, the bag in which CDS packaging was found or the locked glove compartment. ECF No. 26 at 1.

The Court disagrees. Uncontested facts presented by Eldridge through Officer Stackhouse's affidavit establish that after Eldridge was pulled over by Defendants and Eldridge provided his Maryland identification card to Officer Stackhouse, Officer Stackhouse "detected a strong and overwhelming odor of marijuana coming from inside the vehicle" and then searched the car, where he found CDS packaging material inside a backpack and a gun in the glove box. A routine and lawful traffic stop permits an officer to detain the motorist for the purpose of "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (citation omitted). Relevant here, "[a]n officer's detection of marijuana odor is sufficient to establish such probable cause" to expand the scope of the traffic stop to include a

7

search of the vehicle.  *United States v. Palmer*, 820 F.3d 640, 651 (4th Cir. 2016) (citing *United States v. Carter*, 300 F.3d 415, 422 (4th Cir. 2002)).  *See also United States v. Davis*, No. 20-4315, 2022 WL 94529, at *2 (4th Cir. Jan. 10, 2022) (same) (citing *United States v. Lewis*, 606 F.3d 193, 198 (4th Cir. 2010)).  "When police have probable cause, the automobile exception permits "the search of every part of the vehicle . . . that may conceal the object of the search."  *United States v. Alston*, 941 F.3d 132, 138 (4th Cir. 2019) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).  Even accepting as true Eldridge's assertion that Officer Stackhouse could not have seen movement in the car through tinted windows, Officer Stackhouse's search of the interior of the car was nevertheless reasonable and supported by probable cause, given his detection of the "odor of marijuana" inside the car and Eldridge's admitted use of marijuana the prior evening.  The search did not violate Eldridge's Fourth Amendment rights.

There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause.  *See Anderson v. Baltimore Cnty.*, Civ. No. JKB-23-1842, 2024 WL 1014041, at *9 (D. Md. Mar. 8, 2024) (citing *Harrison v. Deane*, 426 F. App'x 175, 181 (4th Cir. 2011)).  Similarly, "under both federal and State law, a claim for false imprisonment can only occur when there is no legal authority or justification for the arresting officer's actions."  *Id.* (citing *Estate of Bryant v. Balt. Police Dep't*, Civ. No. ELH-19-384, 2020 WL 673571, at *25 (D. Md. Feb. 10, 2020)).  The arrest at issue here was supported by probable cause based on Eldridge's admission that he used marijuana the prior evening and the odor of marijuana emanating from the vehicle. Defendants recovered CDS packaging material and a firearm during a lawful search of the vehicle Eldridge was driving.  Thus, Eldridge fails to state plausible claims for false arrest and false imprisonment.

**IV.    CONCLUSION**

Eldridge has failed to state a claim for relief, and, therefore, Defendants' Motions to Dismiss will be granted.  The Complaint and its Supplement will be dismissed with prejudice. Accordingly, Eldridge's Motion to Appoint Counsel will be denied as moot.

A separate Order follows.


___9/23/24___                                                     _____/S/_____
Date                                                                    Matthew J. Maddox
                                                                           United States District Judge